THE BOARD OF CHOSEN FREEHOLDERS OF MIDDLESEX COUNTY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS, DELAWARE AND RARITAN CANAL COMPANY AND PENNSYLVANIA RAILROAD COMPANY, LESSEE, RESPONDENTS.

Argued November 10, 1916—Decided October 11, 1917

1. The uniform course of modern authority establishes the rule that however general the words of an ancient grant may be, it is to be construed by evidence of the manner in which the thing granted has always been possessed and used, for so the parties thereto must be supposed to have intended.

2. The assumption of ownership and control of a bridge by the board of chosen freeholders under the Condemnation act of 1872 (*Pamph. L.*, p. 1163, § 2) vested in that body the title and right of possession for public use, as if the bridge had been erected by the board pursuant to section 1 of *Comp. Stat.*, p. 301. Hence, where the original owners of the bridge had been under obligation to keep and maintain a drawbridge for the benefit of a canal company, such canal company, or its lessees, cannot be said to be under an obligation to contribute toward the rebuilding of the bridge after the ownership of the bridge had passed to a board of freeholders by condemnation.

On *certiorari* removing order of board of public utility commissioners.

Before Justices Swayze, Minturn and Kalisch.

For the prosecutor, *George L. Burton* and *George L. Record.*

For the Pennsylvania Railroad Company, *Alan H. Strong.*

The opinion of the court was delivered by

Minturn, J.  By virtue of the provisions of an act of the legislature found on page 528 of the laws of 1799, a company under the name of "The Proprietors of the New Brunswick Bridge" built a toll bridge over the Raritan river, from the

foot of Albany street, in the city of New Brunswick, to the opposite or northerly side of the said river, some time in the early part of the last century.

This bridge was in existence and operated as a toll bridge at the time and for a considerable time before the Delaware and Raritan Canal Company was incorporated, which was in 1830.

By the provisions of the Bridge act, the bridge company was required to maintain a section of the bridge as a draw-bridge over the channel of the Raritan river. Whether such a drawbridge ever existed, or what part of the river at that time the channel occupied, does not appear.

The Delaware and Raritan Canal Company was incorporated under the laws of 1830, page 73. The canal was built some time thereafter. When the canal was built it was constructed upon either side of the foot of Albany street, and the bridge which commenced there, by using the westerly bank of the river as the westerly bank of the canal, and by constructing cribbing and a towpath in the river for the northerly side of the canal, so that the canal forms a part of what was formerly the river. It does not appear whether or not a draw was constructed in any part of the bridge prior to the construction of the canal. There is no draw in the bridge, however, at any place, except that portion of it which crosses the canal at the foot of Albany street. It does not appear who maintained the draw in the bridge over the canal from the time of the building of the canal up to 1875.

In the year 1875 the board of chosen freeholders condemned this toll bridge, acting under the authority of public laws of 1872, page 1162, and public laws of 1873, page 448. After this condemnation the county assumed the ownership and maintenance of the bridge. The proof is that repairs have been made to the bridge at times by the Pennsylvania Railroad Company, and the company claims that the cost of such repairs has been assumed and paid by the board of chosen freeholders, but no proof is in the record to that effect. It also appears that the bridge, including the draw, has been rebuilt since it came into the possession of the board of freeholders.

It appears that the draw over the canal has become dangerous and must be replaced. In this situation the board of chosen freeholders called upon the canal company and the railroad company, as lessee, to reconstruct this draw, and the defendants refused to do so. Thereupon the prosecutor filed a petition with the board of public utility commissioners of the State of New Jersey, setting up the facts and requesting that the board compel the defendants to reconstruct the said draw. This application was denied by the board of public utility commissioners, and thereupon this writ was obtained to review the report and finding of that board.

We think there was no obligation to repair imposed upon the canal company by its act of incorporation with respect to the bridge in question, or to any part of it, and hence no obligation exists upon the part of its lessee, the Pennsylvania railroad, with respect to the construction or repair thereof.

We think the county by acquiring the bridge by condemnation assumed the burden of maintaining it, and this obligation upon its part is evidenced not only by the continued discharge of that duty by the bridge company, during the period of its ownership, but also by the county, since it assumed control in 1875, covering an interval of over eighty years.

Were there a doubt regarding the construction of the various provisions of law applicable to the situation, it would be dissipated by this practical and contemporaneous construction given to the legislation by the parties themselves. *Contemporanea expositio est optima et fortissima in lege.* 2 *Co. Inst.* 2.

The uniform course of modern authorities fully establishes the rule that however general the words of an ancient grant may be, it is to be construed by evidence of the manner in which the thing granted has always been possessed and used, for so the parties thereto must be supposed to have intended. *Weld* v. *Hornby,* 7 *East* 199; *Rex* v. *Osborne,* 4 *Id.* 327; *Keyport Steamboat Co.* v. *Farmers Co.,* 18 *N. J. Eq.* 13; *State* v. *Kelsey,* 44 *N. J. L.* 1; *State* v. *Wrightson,* 56 *Id.* 126; *Titus* v. *Pennsylvania Railroad,* 87 *Id.* 157.

We find nothing in the subsequent legislation or proceedings which resulted in the present ownership by the board of chosen freeholders, which imposed upon the canal company or its lessee this obligation of maintenance and repair. *Per contra,* the assumption of ownership and control by the board of chosen freeholders under the Condemnation act of 1872 (*Pamph. L., p.* 1163, § 2), vested in that body the title and right of possession for public use, as if the bridge had been erected by the board pursuant to law. 1 *Comp. Stat., p.* 301, § 1.

The manifest intent of this legislation was to vest in the board of chosen freeholders the usual incidents, powers and obligations coincident with title, ownership and control, among which is the obvious duty of maintenance and repair, an obligation which the case shows the board of freeholders frequently recognized and assumed, even to the extent of reconstructing the bridge when in their judgment the public exigencies required such reconstruction.

Without adverting specifically to the conclusions reached by the board of public utility commissioners, we may remark that they are in accord with the views we have reached, and that the order of that board under review should be affirmed, with costs.